■    In the Matter of ROBERT BROWN, Respondent, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Appellants.—Judgment unanimously reversed, without costs, and petition dismissed. Memorandum: Respondents appeal from a judgment in a CPLR article 78 proceeding directing that they afford petitioner, a prisoner, a hearing with respect to the denial of his application for furlough, one of the temporary release programs in Correction Law (§ 851 *et seq.).* Petitioner began participation in the work release program in August, 1976. The 1977 amendment to the Correction Law added a provision (Correction Law, § 851, subd 2, as amd by L 1977, ch 691, § 1, eff Sept. 1, 1977) that if an inmate is denied release on parole, he shall not be deemed eligible for temporary release until he is within one year of his next scheduled appearance before the Parole Board. In August, 1977, shortly after the enactment of this amendment, petitioner, who then was not scheduled to appear for parole consideration until February 2, 1979 and thus was not within one year of parole eligibility, was removed from the temporary release program. In February, 1978, one year from his next scheduled appearance before the Parole Board, petitioner applied for furlough and was denied. The denial was affirmed by the Central Office of the Department of Correctional Services. The reasons given were the serious nature of the crimes of which he was convicted, the stringent new review procedures mandated by the 1977 amendment to the Correction Law, and the receipt of a letter from the District Attorney of Niagara County expressing community opposition to petitioner's release. We find that although under some circumstances deprivation of rights under a work release program may constitute a grievous loss of a liberty interest (see *Matter of Horton v Hongisto,* 70 AD2d 1040; *Durso v Rowe,* 579 F2d 1365, US app pending; *Tracy v Salamack,* 440 F

Supp 930, mod 572 F2d 393), petitioner here did not have an entitlement to a liberty interest rooted in Federal or State law or practice, the denial of which would warrant a hearing (see *Meachum v Fano,* 427 US 215, reh den 429 US 873; *Wolff v McDonnell,* 418 US 539; *Tracy v Salamack, supra).* Petitioner's initial approval for temporary release occurred prior to the 1977 amendment, and his reapplication occurred subsequent thereto. Thus, his initial approval was based on different and less stringent statutory standards from those in effect when he reapplied (see amdt to Correction Law, § 851 *et seq.,* L 1977, ch 691, § 1; Message of Necessity from Governor Carey accompanying S 6950, A 9045, July 14, 1977; Memorandum of Senator Ralph J. Marino, NY Legis Ann 1977, p 226). Although respondents should not have considered the letter from the District Attorney of Niagara County (see *People ex rel. Howland v Henderson,* 54 AD2d 614), the amendment to the statutory requirements and the change in policy reflected therein are sufficient reasons for denial of his reapplication. (Compare *Matter of Horton v Hongisto [supra],* in which petitioner Horton's initial approval and subsequent reapplication both took place subsequent to the 1977 amendment.) Petitioner did not have a cognizable expectation that he would be automatically restored to the temporary release program upon regaining eligibility due to being again within one year of parole consideration and, therefore, is not entitled to a hearing. We note also that petitioner's application was for furlough, not for an on-going, continuous program such as work release. (Appeal from judgment of Orleans Supreme Court—art 78.) Present—Cardamone, J. P., Hancock, Jr., Schnepp, Callahan and Witmer, JJ.